## YARBROUGH VS. ARNOLD ET AL.

Declarations made by persons in possession of personal property, explanatory of the character of the possession, or the title by which it is held, etc., are admissible in evidence as part of the *res gestæ*.

The plaintiff may introduce the defendant's title papers for the purpose of tracing to him, and proving the identity of a slave claimed by the plaintiff, and found in possession of the defendant.

A statute book, not purporting to have been printed under the authority of a sister State, is not admissible in evidence to prove the statute law of such state.

But where the bill of exceptions merely states that such book was introduced in evidence, against the objection of the defendant, without showing what portion of it was read to the jury, or for what purpose, or that the defendant was prejudiced by its admission, the error of the Court in deciding the book to be admissible, will not be sufficient ground for reversing the judgment, and awarding the defendant a new trial.

In civil cases, it is not necessary that the minds of the jurors be free from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of the truth.

The Court below did not err in refusing to charge the jury that the plaintiffs must prove beyond a "*rational doubt*," that the boy *Tom*, named in the declaration, was the same boy mentioned in the deed of trust under which the plaintiffs claimed the slave in controversy.

Where slaves were settled upon a married woman for life, remainder to her children, by deed executed in Mississippi, on removal of the slaves to this State, it was not necessary to record the deed here in order to protect the interest of persons claiming under it. (*Oneill vs. Henderson*, 15 *Ark.* 235.)

The only question admitting of controversy being the identity of the slave sued for, and the plaintiff having produced evidence conducing to prove that the negro sued for, and found in possession of the defendant, was the same negro mentioned in the deed of trust under which the plaintiffs claimed title, and the defendant having introduced no rebutting evidence whatever, the jury were warranted in finding a verdict against him.

*Appeal from Ouachita Circuit Court.*

Hon. ABNER A. STITH, Circuit Judge.

CUMMINS & GARLAND, for the appellants.

One cannot make testimony for himself, and all such should be rejected; 1 *Stark. Ev., part* 2, *p.* 121, *et seq.;* and all testimony not touching the issue should be rejected. *Ib., part* 3, 386.

Books under title of " codes," with notes, etc., cannot be introduced as testimony. *Dixon vs. Thatcher et al.,* 14 *Ark.* 141; *Sec.* 2, *p.* 490, *Ark. Dig.*

Proof of identity of property is essential to the action of replevin. *Hill vs. Robinson,* 16 *Ark.* 90; 2 *Saund. Pl. & Ev.* 760.

Bill of sale or deed, to protect innocent purchasers, ought to be recorded where the property is. *Ark. Dig.* 943, *chap.* 153; 263, *chap.* 37. When there is nothing to the contrary, contracts are to be performed and enforced according to the law where made. *Story's Conflict of Laws* 233, *etc.*

WATKINS & GALLAGHER, for the appellees.

Upon the whole record the verdict was well warranted; and it will not be reversed for the refusal of the court to give an instruction, which, if given, would not have changed the result. 5 *Eng.* 9; 14 *Ark.* 114; 3 *Gill,* 202; 7 *Greenlf.* 442; 11 *Conn.* 342.

The statements of Glover were not objectionable. 1 *Green. Ev. sec.* 131. At any rate the identity of Tom was otherwise sufficiently proven. The identity of the name is *prima facie* evidence of the identity of the person. 1 *Greenl. Ev. sec.* 278, *and cases cited;* 2 *Ib. sec.* 75.

The revised code of Mississippi was admissible. *Dixon vs. Thatcher,* 14 *Ark.* 147; *sec.* 2 *ch.* 66, *Dig.*

Where the title to property vests in one State, it is not divested by removal of the property to another State. *O'Neill vs. Henderson,* 15 *Ark.* 235.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

REPLEVIN for a slave named Tom, brought in the Ouachita Circuit Court, by *Rufus E. Arnold* and wife, *Wildred M.,* and

*Joel, Samuel,* and *Malcome M. Burke,* minors, by Arnold, as their guardian, against Wm. Yarbrough. The suit was commenced in August, 1853, and the slave sued for is described in the declaration as being a man of dark complexion, and about twenty-five years of age. The case was tried upon the pleas of *non detinet,* and property in defendant, verdict for plaintiffs, motion for new trial overruled, bill of exceptions, and appeal by defendant.

During the progress of the cause in the court below, the death of Mrs. Arnold was suggested, and the suit as to her abated. She was the daughter, and the minor appellees were the sons of *Lucy Ann,* wife of *Dr. Virgil J. Burke.*

On the trial, the appellees introduced a deed of trust, executed in Noxubee county, Mississippi, by Samuel Burke, in March, 1840, by which he conveyed to Nathaniel Glover, as trustee, certain slaves, and among them one described as a *boy Thomas, aged* 12 *years,* for the use of *Lucy Ann,* wife of Dr. Burke, during her life, remainder to her children, etc. The deed purports to have been acknowledged by the grantor, before a Circuit Judge, and recorded in Noxubee county, etc.

Glover, the trustee, was sworn as a witness, and stated that he saw the deed executed, etc. The grantor resided in Kentucky, but was on a visit to Mississippi, at the time witness purchased for him, at his request, a negro woman and her children, named in the deed, etc. While the deed was being drawn by the judge, witness heard the grantor state to the judge that he had two boys named *Tom,* and he thought he would put one of them in the deed; and when the deed was read to witness, and before he signed it as trustee, a boy *Tom,* was named in it, etc. He accepted the trust, and the woman and children were delivered to him, but the boy *Tom* was not, ne never saw him, and knew nothing of him. Did not know that the grantor had any other negroes in Mississippi than the woman and children. Dr. Burke, was, at that time, improvident, and very much embarrassed, etc. Some three years after, witness was riding by the house of Dr. Burke, in Noxubee county, stopped at the gate,

and while there, sitting on his horse, he saw a negro man, apparently grown, of black color, passing through a large gate into the field, and Dr. Burke, or some of the family, remarked that that was the boy *Tom* mentioned in the deed—witness did not stop at Dr. Burke's on business connected with the deed. Did not speak to the boy, or notice him particularly—only saw he was black—whether that was the boy Tom, named in the deed, witness knew nothing except what was told him by Dr. Burke, or some of the family, as before stated. About nine years after, in Arkansas, Rufus E. Arnold pointed out to witness a negro man, who, he said, was the boy *Tom* mentioned in the deed, which witness believed was the same negro pointed out to him by Dr. Burke, or some of his family, as before stated, as being the boy *Tom* mentioned in the deed; though witness did not think he should have recognized the boy if he had not been pointed out to him. The only means he had of identifying the boy as the same was that he was of black color.

(1.) " The appellant objected to so much of the testimony of *Glover* as was founded on the declarations of Dr. *Burke*, or his family, as to the boy pointed out to the witness as the boy mentioned in the deed, but the court overruled the objection."

(2.) Against the objection of the appellant, the appellees were permitted to read in evidence two bills of sale; the first executed by *Lucy Ann Burke*, 15th March, 1850, in Ouachita county, by which she sold and conveyed to *Elizabeth C. Pouder*, " *a certain negro boy slave by the name of Tom, about nineteen years old*," etc. The second bill of sale was executed by *Elizabeth C. Pouder*, and her husband, 2d January, 1852, to appellant, Yarbrough, for " *slave named Tom*."

The deputy sheriff, who executed the writ of replevin, proved that he found in possession of the appellant a negro man named *Tom*, of dark color, about twenty-five years of age. He had seen the same negro in possession of Dr. Burke, in 1849, and afterwards in possession of Dr. Burke, in 1849, and afterwards in possession of Dr. Pouder, (the husband of Elizabeth C. Pouder.)

It was also proven that *Mrs. Lucy Ann Burke* had departed this life, and that Mrs. Arnold, and the minor appellees were her children, etc.

(3 ) The bill of exceptions states that in an early stage of the trial, the appellees offered to read in evidence a book called *Hutchinson's Mississippi Code, the title page of which was as follows:* " *Code of Mississippi, being an analytical compilation of the public and general Statutes of the Territory and State, with tabular reference to the local and private acts, from* 1798 *to* 1848, *with the National and State Constitutions, cessions of the country by the Choctaw and Chickasaw Indians, and acts of Congress for the survey and sale of the lands, and granting donations thereof to the State—by A. Hutchinson, Jackson, Mississippi; published for the compiler by Price and Fall, State printers,* 1848."

The appellees also offered to read in evidence another book, the title page of which was as follows: " *The Revised Code of the Laws of Mississippi, in which are comprised all such acts of the General Assembly of a public nature, as were in force at the end of the year* 1823, *with a general index, published according to an act of the General Assembly, entitled an act declaring what laws of a public nature shall be incorporated in the Revised Code, and providing for the publication thereof, passed June* 30th, 1822, *and an act supplemental thereto, passed January* 21st 1823—*Natches: printed by Francis Burke,* 1824."

And it was agreed by the parties (the bill of exceptions further states) that the books referred to should be taken as if set out *in extenso* in the bill of exceptions, and read upon the final hearing of the cause.

To the reading of which books as evidence of the laws of Mississippi, the appellant objected, but the court overruled the objection, and permitted the books to be read.

The appellant introduced no evidence upon the trial.

(4.) The appellant asked the court to give to the jury ten instructions, all of which the court gave but the 5th, 8th and 9th.

The 5th is as follows: " The plaintiff must prove to the satis-

faction of the jury beyond a *rational* doubt that the boy *Tom*, mentioned in the declaration, and the one mentioned in the said deed (of trust) are one and the same."

The substance of the 8th and 9th instructions is that the plaintiff, claiming the slave under a deed of trust executed in Mississippi, it was necessary for it to be recorded in the county in this State into which the slave was brought, in order to defeat the title of a person purchasing the slave in good faith, without notice, etc.

1. By a provision of the deed of trust, the trustee was authorized to permit the slaves to remain in possession of Mrs. Burke, for the maintenance and education of her children, etc. The remark of Dr. Burke, or some of the family, to the trustee, while on a casual call, that the negro, apparently in possession of the family, passing through the yard into the field, was the boy *Tom* named in the deed, was a natural remark under the circumstances, free from suspicion of design, made more than ten years before this suit was brought, or the cause of litigation arose, and we think was admissible as evidence, for what it was worth—under the rule that declarations made by persons in possession of personal property, explanatory of the character of the possession, or the title by which it is held, etc., are competent as part of the *res gestae.* *Sec.* 1, *Greenlf. Ev. sec.* 109; *Oden vs. Stubblefield,* 4 *Ala.* 42; *Overseers, etc., vs. Overseers, etc.,* 2 *Caine's Rep.* 106; *Willis vs. Farley,* 3 *Car. & Payne,* 395; *McBride et al. vs. Thompson,* 8 *Ala.* 625; *Thompson vs. Mawhinney et al.,* 17 *Ala.* 366; *Mims vs. Sturdevant et al.,* 23 *ib.* 666; *see also Reed vs. State,* 16 *Ark.* 505.

2. The bills of sale from Mrs. Burke to Mrs. Pouder, and from Mrs. Pouder and her husband to the appellant, were admissible as conducing to prove that the boy *Tom*, found in possession of the appellant, and taken by the officer, under the writ of replevin, was the same boy *Tom* named in the deed of trust, for which purpose the bills of sale were doubtless introduced by the appellees.

3. The court below erred in permitting the appellees to in-

troduce *Hutchinson's Code*, as evidence of the laws of Mississippi, because, by its title page, as copied in the bill of exceptions, it does not purport to have been printed under the authority of the State, etc. See *Dixon vs. Thatcher, et al.* 14 *Ark.* 147.

The *Revised Code*, offered in evidence, purporting to have been printed by authority, etc., was admissible. *Gould's Dig. chap. 67, sec.* 2.

For what purpose these books were offered in evidence, or what portions of them were read upon the trial, does not appear from the bill of exceptions. The deed of trust appears to have been admitted in evidence on the statement of Glover, that he saw it executed, without objection on the part of the appellant. It does not appear from the bill of exceptions that any question was made in relation to the certificates of acknowledgment and registration appended to it. The bill of exceptions merely presents the naked abstract question, whether the statute books referred to were admissible in evidence. We have held that one of them was not, but as it does not appear that the appellant was prejudiced by the error of the court, it is no ground for reversing the judgment, and awarding a new trial.

4. The doctrine of doubts, too often abused in its application in criminal cases, does not apply to civil suits. *Mr. Greenleaf says*: " In civil cases, where the mischief of an erroneous conclusion is not deemed remediless, it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth. But in criminal cases, because of the more serious and irreparable nature of the consequences of a wrong decision, the jurors are required to be satisfied beyond any reasonable doubt, of the guilt of the accused, or it is their duty to acquit him, the charge not being proved by that higher degree of evidence which the law demands. In civil cases, it is sufficient that the evidence agrees with and supports the hypothe-

sis which it is adduced to prove," etc. 1 *Greenleaf Ev. sec.* 13 *a.*

See also, Mr. Starkie's remarks as to the degrees of evidence required in civil cases. 1 *Stark. Ev. p.* 543.

The court did not err in refusing to give the 5th instruction, moved by the appellant, in the form in which it was proposed.

The question presented in the 8th and 9th instructions, has heretofore been settled by this court. See *Oneill vs. Henderson,* 15 *Ark.* 235.

The court did not err in refusing to give them.

5. The verdict was not without evidence to sustain it. The only question that could admit of controversy was the identity of the negro, and the appellees having produced evidence conducing to prove that the negro sued for, and found in possession of the appellant, was the negro mentioned in the deed of trust, and the appellant having introduced no rebutting evidence whatever, the jury were warranted in finding a verdict against him.

Upon the whole record the judgment of the court below must be affirmed.

Absent, Mr. Justice RECTOR.