## AMMON v. MARTIN.

### Opinion delivered May 26, 1894.

*Gift—Delivery—Acceptance.*

> Where a mother on her deathbed delivered a note for her daughter to another whom the daughter had designated as her agent to receive it, under circumstances indicating the intention to make a gift, either *inter vivos* or *mortis causa*, the delivery was sufficient to pass title to the note, and it will be presumed that it was accepted.

Appeal from Woodruff Circuit Court.

GRANT GREEN, JR., Judge.

*John C. Palmer* for appellant.

The only question involved in this case is as to the delivery. The facts proved show a complete delivery before the mother's death. 12 Johns. 418; 1 Johns.

Ch. 240; 44 Ark. 42; 22 S. W. Rep. 1077; 18 *id.* 1072; 43 Ark. 307; 5 Am. & Eng. Enc. Law, 447; 15 Wend. 445.

*N. W. Norton* for appellees.

There was no delivery. To constitute a gift *causa mortis*, there must be delivery in the lifetime of the donor. See 107 U. S. 602; 2 Sup. Ct. Rep. 415.

WOOD, J. This was a suit on a note executed by appellees to Mrs. Eliza Lynch. The appellant alleges that the note was endorsed by Eliza J. Lynch in blank, was delivered to her during the lifetime of Eliza J. Lynch, and that she thereby became the owner of same. The appellees, Martin and wife, admitted the execution of the note, and say that the balance due thereon is three hundred and twenty-six and 75-100 dollars. They also say that Robert C. Lynch, the administrator of the estate of Eliza J. Lynch, claims that the note is the property of the estate. They pray the court to adjudge the question of ownership between appellant and appellee, R. C. Lynch, administrator, and let judgment go against them for balance due. R. C. Lynch was permitted to interplead as administrator of the estate of E. J. Lynch, and claims the note as the property of the estate. The issue on the interplea was submitted to the court sitting as a jury, whose finding and judgment was for the interpleader in the sum of three hundred and sixty-one and 53-100 dollars.

It is conceded that the court declared the law correctly, and we are only asked to review the finding of the court as to the ownership. The testimony upon that point is as follows: Mrs. Turner, a witness, testified: "Robert C. Lynch is my brother. Mrs. Eliza E. Lynch was my mother, and I am perfectly familiar with her handwriting. I recognize the handwriting on the back of the

Martin note to be my mother's handwriting, to the best of my knowledge and belief. My mother died on February 5, 1891. For some time previous to her death, both before and after Mrs. Ammon came out here, I heard my mother say she intended giving the Martin note to Mrs. Ammon. I advised my mother to write Mrs. Ammon a copy of the note, which she did, and I read it after she wrote it. I recognize exhibit "A" as the copy of the note written by my mother, and which she sent Mrs. Ammon before she came out here. Mrs. Ammon came to Brinkley some time before my mother died. There was no one present when my mother died, except Mrs. Ammon and myself. My mother called Bell Ammon before she died, and offered her something which I think was the pocket-book, and Bell told her to give it to me, and she gave it to me. I gave the pocket-book to Mrs. Ammon, because I knew it was my mother's wish. Mrs. Ammon is now in San Jose, California. The Martin note was in the pocket-book, and there was some small change in another pocket-book. I think it was three or four o'clock when my mother died, and it was some time before dinner of the same day that I gave Mrs. Ammon the pocket-book with the Martin note in it. I gave the pocket-book to my son, James Turner, to hold, and he gave it back to me, and I gave it to Mrs. Ammon. Mrs. Ammon was here when my mother died, on her way to California. Mrs. Ammon had hardly got out of the door before my mother died. Mother made her home with me as much as she did with her other children." R. C. Lynch testified: "My mother died about three or four in the morning, and Mrs. Ammon told me afterwards that she did not get the note until the next day." Mrs. Vaughn testified: "I understood from Mrs. Ammon and Mrs. Turner that the pocket book, containing the note and some change, was in my mother's possession just before she died." The memo-

randum on the copy of the note sent Mrs. Ammon is as follows: "This is the copy. When I am gone, call for it. ELIZA J. LYNCH." This memorandum was in the handwriting of Mrs. E. J. Lynch.

The proof is ample to support a gift, either *causa mortis* or *inter vivos*. The gift being made by Mrs. Lynch while on her death bed, and but a few hours before her death, the presumption is it was a gift *causa mortis*. But death, supervening in so short a time after the delivery, practically eliminated the element of revocability which distinguishes a gift *causa mortis* from one *inter vivos*. Delivery before death is just as essential to a gift *causa mortis* as it is to a gift *inter vivos*, and the same rules as to delivery are applicable to both ; but in the former, although absolute in form, the title to the thing given remains in the donor, and the gift is subject to revocation at any time prior to his death. 3 Pomeroy, Eq. Jur. sec. 1150. In the latter—*inter vivos* —the gift becomes absolute upon delivery. Here the proof shows that Mrs. Lynch, *dum vivens*, delivered the note in controversy to Mrs. Turner for Mrs. Ammon. This was sufficient to make the gift complete, no matter what was its character. "The intention to give must be accompanied by a delivery, and the delivery must be made with an intention to give." 3 Pomeroy, Eq. Jur. sec. 1149.

The intention of Mrs. Lynch to give the Martin note to appellant was manifest, as shown by her declarations to Mrs. Turner, and also by her acts, as expressed in the copy of the note and the endorsement thereon which she sent to appellant in California. That she remained resolute and unalterable in this intention is evidenced by the circumstances of the delivery of the note at the death bed, when her intention was merged into action, and the gift became consummate. It was doubtless Mrs. Lynch's intention to deliver the note to her daughter, Mrs. Am-

mon, in person.   This is shown by calling appellant to her bed side, and offering her the pocket book.

While the delivery cannot be made to the donor's agent for the donee, it may be made to the donee herself, or to her agent or a trustee for her.   When appellant requested her mother to hand the pocket book to Mrs. Turner, she made Mrs. Turner her agent to receive it, and hence the delivery was made to the agent of appellant.   3 Pomeroy's Eq. Jur. sec. 1149 ; *Clough* v. *Clough*, 117 Mass. 83; *Baker* v. *Williams*, 34 Ind. 547 ; *Woodburn* v. *Woodburn*, 123 Ill. 608.

The gift being for the advantage of appellant, the presumption would be that she accepted it, even if there were no proof to that effect.   *De Levillain* v. *Evans*, 39 Cal. 120 ; *Darland* v. *Taylor*, 52 Iowa, 503 ; *Sourwine* v. *Claypool*, 138 Pa. St. 126.   But here there is no positive proof of acceptance.

So we can find no element wanting to a perfect gift of the note in suit from Mrs. Lynch to appellant, and, in our opinion, there is no proof to support any other view.

The judgment of the Woodruff circuit court is therefore reversed, and the cause is remanded for new trial.