DAILEY *v.* ADAMS.

5-1640                                   319 S. W. 2d 34

Opinion delivered October 27, 1958.

[Rehearing denied January 19, 1959]

*Botts & Botts,* for appellant.

*George E. Pike,* for appellee.

PAUL WARD, Associate Justice. Appellant, Charlie Dailey, filed a claim in the amount of $7,000 against the estate of Maggie M. Goodwin which was disallowed by the Executor and also by the Probate Court. For a reversal, he prosecutes this appeal. The controversy between the parties is based not upon disputed facts but upon the legal significance of those facts.

Maggie M. Goodwin died testate on March 7, 1957. Her will was executed June 2, 1956 and probated March 25, 1957. This will is not involved or significant in this litigation except in a single instance to be noted later. The executor of the will is H. C. Adams.

On September 5, 1957 appellant filed his claim which consisted only of the usual affidavit with two exhibits attached. One exhibit was a check, as follows:

"DeWitt Ark.          October 19, 1956          No. ..........
FIRST NATIONAL BANK
PAY TO THE
 ORDER OF .............. Charlie Dailey ................ $7,000.00
Seven thousand no/100 ............................ DOLLARS
FOR from my estate as
          mentioned in letter ..........Maggie M. Goodwin"

The other exhibit was a written document, to-wit:

"I Maggie M. Goodwin of sound mind do hereby *artharize* Charlie Dailey to rite this check on me for $7,000.00 to bee paid out *of my estate* to Charlie Dailey and he is to care for my *dog* Madam Shan for her lifetime and *beried in a pine box* at the foot of my grave and to place on my cemetary a arch that I have told

Mr. Lawson Fly about the size and shape to be placed in the South West corner of the Merritt Cemetary bearing the name the Merritt Cemetary by **Maggie Merritt** Goodwin and to remodel my house for his convenience leaving the too original rooms that was moved on the property.

R by Charlie **Dailey**
for Maggie M. Goodwin
    S/s Maggie M. Goodwin''

The check and document were placed in an envelope and delivered to appellant at the time of their execution and were held by him until filed as a claim in the Probate Court.

Appellant's contentions here are based on two grounds. *One.* The trial court erred in holding (a) the check and document were without consideration, (b) claimant had burden of showing consideration, and (c) testimony could not be introduced to show consideration. *Two.* The trial court erred in holding that the check and document did not constitute a gift *inter vivos* or a gift *causa mortis.*

*One.* At the beginning it is noted that although the document has certain testamentary aspects, appellant makes no claim on that basis. In this appellant is correct because the testimony and the document show it was not properly executed as a will or as a codicil to a will. Nor does appellant base his claim on compensation for services rendered during the deceased's lifetime. If he had done so certain oral testimony would have been admissible.

We gather from statements in appellant's brief that his claim is based upon a written contract. In response to an inquiry by the court it was stated that appellant was not relying on an implied contract, but that he was relying on a ''specific contract.'' At another place we find this statement: ''It is insisted by the claimant that the instruments dated October 19, 1956 represented a *written* contract and are obligations against

the estate; said instruments are heretofore set out fully in this brief." (emphasis supplied). Viewed in this light, the Chancellor's finding that no valid contract existed must be sustained, as indicated below.

The document was not signed by appellant. He was not obligated to do anything. There was no consideration shown in the document. It mentioned nothing appellant had done in the past, but only things he was to do in the future. It is not stated nor was it shown that he had performed any part of the socalled contract. Appellant does not rely on any mistake or fraud, in the absence of which parol testimony was inadmissible. In *American Southern Trust Co.* v. *McKee*, 173 Ark. 147, (at page 160), 293 S. W. 50 this court said: ". . . it is universally held that a written contract, free from doubt and ambiguity, cannot be altered or contradicted by parol evidence except for fraud or mistake." The trial court was therefore correct in refusing to allow appellant to show by parol testimony what services he had rendered to Mrs. Goodwin during her lifetime. Moreover, even had such testimony been admissible it would have not necessarily shown consideration for the purported contract under consideration. Item 5 of Mrs. Goodwin's will heretofore mentioned shows that she gave appellant 4 lots in Block 42 in the City of DeWitt. This could have been for services already rendered since all services mentioned in the document were to be performed in the future.

*Two.* In the alternative to the first contention discussed above, appellant says the trial court erred in not allowing his claim on the basis of a gift. We do not agree.

There was no gift *inter vivos* because there was no irrevocable transfer of the $7,000 to appellant which is necessary under the decisions of this court dating back to *Ammon* v. *Martin*, 59 Ark. 191, 26 S. W. 826 where, in this connection, the court said: "The gift being made by Mrs. Lynch while on her death bed, and but a few hours before her death, the presumption is it was a gift *causa mortis*. But death, supervening in so short a time after the delivery, practically eliminated the ele-

ment of revocability which distinguishes a gift *causa mortis* from one *inter vivos*. Delivery before death is just as essential to a gift *causa mortis* as it is to a gift *inter vivos*, and the same rules as to delivery are applicable to both; but in the former, although absolute in form, the title to the thing given remains in the donor, and the gift is subject to revocation at any time prior to his death. In the latter — *inter vivos* — the gift becomes absolute upon delivery." In the case under consideration there was a delivery of the check to appellant, but appellant had no right to cash it at that time, and there was no circumstance which eliminated "the element of revocability." There was a period of approximately 140 days (from Oct. 19, 1956 to March 7, 1957) in which Mrs. Goodwin could have stopped payment on the check or changed her will or could have revoked the document. We have carefully considered the cases relied on by appellant, but find they can be distinguished on the facts or have no bearing on the issue here considered. There is nothing in *Burks* v. *Burks,* 222 Ark. 97, 257 S. W. 2d 369 contrary to the views above expressed.

Nor do we think appellant's claim can be sustained on the basis of a gift *causa mortis.* The question of irrevocability does not arise in such a gift, but it is essential that the gift be made in contemplation of death. See: *Hatcher* v. *Buford,* 60 Ark. 169 (pp. 173, 4), 29 S. W. 641, and *Ellsworth, Administrator* v. *Cornes,* 204 Ark. 756, 165 S. W. 2d 57. No such required showing is disclosed by the record, but just the contrary. As stated before, approximately 140 days elapsed after the check was written before Mrs. Goodwin died. While it is shown that she was ill a greater portion of this time there was no proof that the check was written in contemplation of death.

Affirmed.