### GORDON *v.* CLARK.

#### Opinion delivered June 13, 1921.

1. COURTS—JURISDICTION OF PROBATE COURT.—Where the question of title to property belonging to deceased was involved in a contest between the administrator and a certain claimant, the probate court was without jurisdiction.

2. JUDGMENT—RES JUDICATA.—To render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear from the record or from extrinsic evidence that the particular matter sought to be concluded was raised and determined in the prior suit, or that it might have been litigated in that case.

3. JUDGMENT—RES JUDICATA.—The rule that a valid decree in a suit cuts off all defenses which might have been pleaded therein refers only to such matters as properly belong to the subject of the controversy, and are within the scope of the issues raised by the pleadings.

4. WILLS—RES JUDICATA.—Where the probate court ordered the statement of the wishes of a dying person as to his property to be reduced to writing and admitted as a nuncupative will, and on appeal to the circuit court probate was denied on the ground that the amount of property involved was more than $500, and that such statement was therefore not good as a nuncupative will under Crawford & Moses' Digest, § 10497, such judgment was not *res judicata* in an action to enforce a gift *causa mortis* alleged to have been made by decedent.

5. GIFTS—ELEMENTS OF GIFT CAUSA MORTIS.—The general rule is that where a person realizes that he is about to die, and under a sense of impending death gives chattels to another intending to pass title in the event of his death, and the latter accepts the gift, such facts constitute a gift *causa mortis.*

6. GIFTS—ACCEPTANCE.—Where a gift is made to one person for another, there will be a presumption of acceptance if the gift is beneficial.

7. GIFTS — SUFFICIENCY OF DELIVERY.—Where one, realizing that death is impending, gave to one person for others certain Liberty Bonds and War Savings Stamps, there was a sufficient delivery of these items to constitute a gift *causa mortis.*

8. GIFTS—DELIVERY OF DEPOSITOR'S BANK BOOK.—Delivery of a depositor's bank book, which was merely evidence of the account, was not sufficient to constitute a valid gift *causa mortis* of the money on deposit to the depositor's account.

9. GIFTS—LIFE INSURANCE POLICIES.—Life insurance policies payable to legal representatives of the insured may be transferred by mere delivery without written assignment to one person for another as a gift *causa mortis.*

10. GIFTS—DONATIO MORTIS CAUSA OF REAL ESTATE.—A *donatio mortis causa* of real estate can not be sustained.

11. GIFTS — PARTIAL INVALIDITY.—Where a decedent made a gift *causa mortis* of several classes of property, and the gift to a portion of them was invalid, this fact did not invalidate the gift as to the other classes of property.

Appeal from Sebastian Chancery Court, Greenwood District; *J. V. Bourland,* Chancellor; reversed.

STATEMENT OF FACTS.

Appellant brought this suit in equity against appellees, and the prayer of her complaint is that the title to a one-half interest in the property described in the complaint be divested out of appellees and vested in her.

The complaint alleges that on the 11th day of December, 1918, A. T. McMillan departed this life intestate in the Greenwood District of Sebastian County, Arkansas, and that he was a citizen of that county and State at the time of his death; that at the time of his death he owned personal property consisting of about $350 in Liberty Bonds; about $400 in War Savings Stamps, about $90.50 deposited in a bank and the proceeds of two policies of insurance, one in the sum of $735 and the other in the sum of $1,000.

That the said A. T. McMillan became sick, and realizing that he had but a few hours more to live, called to his bedside Wilmot Clark, Jr., and delivered to him an envelope containing the Liberty Bonds, War Savings Stamps, insurance policies, bank book showing the amount deposited to his credit in the bank, and some deeds to real estate. That he directed said Wilmot Clark, Jr., to divide said property equally between appellant, who was the mother of his deceased wife, and his own mother. Appellant further states that William M. McMillan and Susan McMillan, who were defendants in the court below, were respectively the father and the mother of A. T. McMillan, deceased, and that the other appellees, who were also defendants in the court below were his brothers and sisters.

Appellee, Wilmot Clark, Jr., filed an answer, in which he admitted that A. T. McMillan, realizing that he was about to die, called him to his bedside and gave him a packet containing Liberty Bonds, War Savings Stamps, insurance policies, bank book and deeds, and directed him to divide his property equally between his mother and the mother of his deceased wife; that he hold said property subject to the orders of the court.

Appellees allege that the chancery court has no jurisdiction over the cause, and say that the property claimed by appellant is now in the control of the probate court, which has exclusive jurisdiction of the distribution thereof. They allege that Wilmot Clark, Jr., is the administrator of the estate of A. T. McMillan, deceased,

and that he holds the property described in the complaint to be distributed to the heirs at law of A. T. McMillan, deceased, in accordance with the laws of the State, and that said estate is now in process of administration in the probate court of Sebastian County.

Appellees also interposed a plea of *res judicata*, based on the following facts:

After the death of A. T. McMillan, deceased, Wilmot Clark, Jr., appeared in the probate court and stated to said court that A. T. McMillan, realizing that he was about to die in a few hours, gave to him in a package the property described above, consisting of Liberty Bonds, War Savings Stamps, bank book, insurance policies and deeds.

The proceedings had before the court were those prescribed for the proving of nuncupative wills. The court reduced the transaction had between A. T. McMillan just prior to his death and Wilmot Clark, Jr., to writing and admitted the same to probate as a nuncupative will.

The heirs at law of A. T. McMillan duly prosecuted an appeal to the circuit court. The circuit court found that on the 14th day of January, 1918, A. T. McMillan and Etta McMillan, his wife, each made a will in writing devising to the other all of his or her property; that said Etta McMillan died a few days before her husband, and that all of her property vested in her husband under her will; that her husband, A. T. McMillan, died intestate on December 14, 1918, and that under section 10497 of Crawford & Moses' Digest, no nuncupative will is good where the estate bequeathed exceeds the value of $500; that the oral directions given by A. T. McMillan to Wilmot Clark, Jr., for a distribution of his estate, bequeathed property exceeding the value of $500, and for that reason could not be reduced to writing and probated as a nuncupative will.

It was therefore adjudged by the court that the judgment of the probate court, reducing said directions to writing and admitting the same to probate as a nuncupative will, should be canceled and set aside.

It was further ordered and adjudged that a copy of the judgment of the circuit court be transmitted to the probate court and entered on the records of that court. No appeal was taken from this judgment.

Upon this state of the record the case came on for hearing in the chancery court on October 18, 1920, and it was decreed that the complaint of appellant should be dismissed for want of equity. The case is here on appeal.

*Webb Covington* and *G. L. Grant,* for appellant.

1. There is only one question in this case, *i. e.,* has the chancery court jurisdiction to try and determine the cause? The question of *res judicata* can not be considered, for that is an affirmative defense to be heard in the trial below, and, as there was no trial and no testimony introduced by either party, nothing is open now except the question of jurisdiction. There was a gift to appellant. The delivery to Clark of the property was the best one that the nature of the property at the time admitted. The gift was intended *in presenti* and accompanied by delivery and sufficient. 59 Ark. 96; 93 *Id.* 563. The probate court has no jurisdiction of this case. 110 Ark. 119. Probate courts can not try the title to property. 111 Ark. 357; 72 *Id.* 330; 227 S. W. 1-3.

2. The chancery court has jurisdiction, as a trust was involved. 3 Am. L. Rep. 912-13; 101 Ark. 455; 227 S. W. 1-3.

*W. A. Falconer, Jos. R. Brown* and *Geo. W. Johnson,* for appellees.

1. Appellant's brief is not in conformity with rule 9 of this court.

2. The appeal presents only a moot question, which this court will not decide. 90 Ark. 165; 91 *Id.* 292; 92 *Id.* 242.

3. The complaint stated no cause of action, and was properly dismissed. If the judgment was correct on any ground, whether that ground was relied on by the lower court or not, the cause should be affirmed. 88 Ark. 140; 107 *Id.* 462; 126 *Id.* 159; 117 *Id.* 304.

4. . The case was properly dismissed, as it was *res judicata*.

The complaint attempts to set up a gift *causa mortis*. Under the circumstances here the law presumes a gift *causa mortis* and not *inter vivos*. 131 Ark. 507. Real property is not the subject of a gift *causa mortis*. 20 Cyc. 1242. Where the donor intended to give property as a whole, a gift of part of it only will not suffice, and the whole gift must fail. 20 Cyc. 1231. The complaint shows that McMillan made Clark his agent to make delivery after his death, and this is a nullity. 44 Ark. 42.

Money in bank and the proceeds of an insurance policy do not pass by delivery. 99 Ala. 441; 12 So. Rep. 420; 92 Am. Dec. 481.

No trust is involved here, and the cirucit court had jurisdiction. 10 N. E. Rep. 352. The judgment of the circuit court is not open to collateral attack, and every presumption is in favor of the court's jurisdiction. 77 Ark. 497; 101 *Id.* 390. Want of jurisdiction was not pleaded in the lower court, and appellant is now precluded. 119 Ark. 413; 110 *Id.* 119. The probate court is a court of superior jurisdiction, and its judgment not subject to collateral attack. 92 Ark. 611, 616.

The judgment against Mrs. Gordon is not void, and by long acquiescence of the parties jurisdiction may be conferred on the probate court. 110 Ark. 119; 44 *Id.* 42.

HART, J. (after stating the facts). The chancery court erred in sustaining the plea to the jurisdiction of the court. It is true that the estate of A. T. McMillan, deceased, was in course of administration in the probate court. The question of the title to the property did not arise in that court as a necessary incident to the administration of other matters over which the probate court had jurisdiction.

The present case involves a contest between the administrator and a claimant to certain property of the estate, and it is well settled that the probate court has no jurisdiction of a contest between an executor or ad-

ministrator and others over the title of property belonging to the deceased. *King* v. *Stevens,* 146 Ark. 443, and cases cited, and *Union & Merc. Trust Co.* v. *Hudson,* 147 Ark. 7.

Again it is contended that the decree of the chancery court should be upheld on the appellees' plea of *res judicata.* To sustain that plea it was shown that Wilmot Clark, Jr., had represented to the probate court that A. T. McMillan, deceased, on his death bed had delivered to him a packet containing certain property and directed that he should divide it equally between appellant, the mother of his deceased wife, and his own mother. The probate court ordered the statement to be reduced to writing and to be admitted to probate as a nuncupative will, and, on appeal to the circuit court, probate was denied on the ground that the property involved amounted to more than $500, and that, under section 10497 of Crawford & Moses' Digest, no nuncupative will is good where the estate bequeathed exceeds the value of $500. To render a judgment in one suit conclusive of a matter sought to be litigated in another, it must appear from the record, or from extrinsic evidence that the particular matter sought to be concluded was raised and determined in the prior suit; or that it might have been litigated in that case. *Livingston* v. *Pugsley,* 124 Ark. 432, and *Morton* v. *Linton & Plant,* 138 Ark. 297.

The rule that a valid decree in a suit cuts off all defenses which might have been pleaded therein refers only to such matters as properly belong to the subject of the controversy, and are within the scope of the issues raised by the pleadings. *Fourche River Lumber Co.* v. *Walker,* 96 Ark. 540. The title to the property in controversy in this suit was not involved in the probate proceeding. The only question raised or that could have been raised in that proceeding was whether or not the statement of Wilmot Clark, Jr., to the probate court formed a sufficient basis to warrant it in being reduced to writing and filed for probate as a nuncupative will.

The circuit court held that no nuncupatve will was established under the facts presented and no appeal was taken from that judgment. Hence that judgment is conclusive that no valid will was made by A. T. McMillan. But appellant might be entitled to the property and still not be entitled to it as a legatee under a nuncupative will, The fact that a nuncupative will was not probated does not prevent appellant from claiming the property under a gift *causa mortis*. The reason is that the question of whether or not the decedent had given the property to her, in view of his impending death, did not become an issue in the proceeding to probate a nuncupative will, and could not have been made an issue in such proceeding. Such an issue could only be raised in an independent suit between the claimant and the administrator of the decedent, like the present one. Therefore the issues raised in the present case were not adjudicatd in the probate proceedings.

The general rule is that where a person realizes that he is about to die, and under a sense of impending death gives chattels to another intending to pass title in the event of his death, and the latter accepts the gift, such facts constitute a gift *causa mortis*. *Lowe* v. *Hart*, 93 Ark. 548.

It is generally held that where such a gift is made to one person for another there will be a presumption of acceptance where the gift is beneficial. *Ammon* v. *Martin*, 59 Ark. 191; *Pyle* v. *East* (Iowa), 3 A. L. R. 885, and case note at page 917, and *Varley* v. *Sims* (Minn.), 8 L. R. A. (N. S.) 829.

In the present case A. T. McMillan, realizing that he was about to die in a short time, gave to Wilmot Clark, Jr., a packet containing Liberty Bonds, War Savings Stamps, two insurance policies, his check book, and some deeds to real estate and directed him to divide the property equally between his own mother and his deceased wife's mother. There was about $350 in Liberty bonds, and about $400 in War Savings Stamps. Under the rule just announced, there was a delivery of these items and

they constituted a gift *causa mortis*. There was about $90.50 deposited in the bank to the credit of A. T. McMillan. The question is presented as to whether or not the delivery of the depositor's bank book constituted this a gift *causa mortis*. The deposit of A. T. McMillan could not be withdrawn from the bank by the production of his bank book, but could be withdrawn only on his check. The delivery by McMillan to Clark of his bank book did not give the latter dominion and control over the money which McMillan had on deposit in the bank. The deposit was just as subject to check, without the production of the book as with it. The book was only evidence of the state of the account between the bank and McMillan. Therefore, we hold that the facts stated are not sufficient to constitute a valid gift *causa mortis* of the money on deposit in the bank to the credit of deceased. *Jones* v. *Weakley* (Ala.), 12 So. 420, and cases cited; *Ashbrook* v. *Ryon,* 2 Bush (Ky.), 228; 92 Am. Dec. 481, and *Szabo* v. *Speckman* (Fla.), L. R. A. 1917 D, 357.

Our own case of *Lowe* v. *Hart,* 93 Ark. 548, is not opposed to the view herein expressed, but rather confirms it. In that case the bank through its cashier had issued a written certificate of deposit, and the certificate recited that the amount deposited was payable to the order of the depositor on the return of the certificate properly indorsed. The depositor on his deathbed had given the certificate to Mrs. Hart and spoke of it as a check for the money. Under the circumstances the court held that there was a valid gift *causa mortis.*

As we have already seen, the bank book in the present case was merely evidence of the amounts which from time to time had been placed in the bank by the depositor, and the delivery of the book could not pass the title thereto.

The delivery of the life insurance policies was complete, and it is well settled that life insurance policies payable to the legal representatives of the insured may be transferred by a mere delivery without a written assignment. *Gledhill* v. *McCoombs* (Me.), 45 L. R. A. (N.

S.) 26, Ann. Cas. 1914 D, 294. In a case note to the latter citation on page 297, it is said that the general, if not universal, rule is, that a policy of insurance on the life of the donor may be made the subject of a gift in the same manner as any other chose in action and numerous decisions are cited in support of the rule.

Again on page 298 it is said that the gift of a policy of life insurance is valid in the absence of a written assigment, provided there is a delivery of the policy by the donor to the donee, and numerous cases are cited in support thereof. In such cases the courts make no distinction between bonds or promissory notes and policies of life insurance. Each is held to be a contractual obligation to pay money at a certain time, so that it is said that, if the mere delivery of a promissory note without indorsement is sufficient to entitle the donee as against the donor and his representative to demand and receive the money from the obligor, no reason can be perceived why under like circumstances the donee of a life insurance policy should not be vested with like rights.

The attempted gift of the real estate was not a valid gift *causa mortis*. It is almost universally held that a gift of real estate as a *donatio mortis causa* can not be sustained. 12 Cyc. 1242 and cases cited; *Meach* v. *Meach,* 24 Vt. 591; and *Johnson* v. *Colley* (Va.) 99 Am. St. Rep. 884, and case note at page 908.

It results from the views we have expressed that there was a valid gift *causa mortis* of the Liberty Bonds, the War Savings Stamps and the insurance policies, but that no title passed to the money deposited in the bank or to the real estate.

Finally, it is contended that there was no intention on the part of the donor to make the gift otherwise than as a whole, and that the failure of a part must defeat the whole. To support this contention, counsel cite *McGrath* v. *Reynolds,* 116 Mass. 566, and *Knight* v. *Tripp* (Cal.), 54 Pac. 267.

We do not think that the facts in those cases control here. In each of them direction was given to a third

person as here to pay certain bequests to others, but here the analogy ends. In each of those cases the donor directed the donee to give the property to various persons, and different amounts were directed to be given to them. It was the evident purpose of the donor to distribute his property to all these persons, and there was nothing to indicate that a portion of the property would have been given to some of them if the whole gift was not held valid.

In the case at bar the donor directed the donee to divide his property equally between two persons, and a failure of a part of the intended gift could in no wise affect the remainder. It is not to be supposed that the donor would not have intended a part of his property to be divided equally between the parties because his gift to the whole of it failed. On the contrary, it was the evident intention of the donor to divide all of his property between his own mother and his deceased wife's mother. The reason of his course is perfectly apparent, He and his wife had made wills in favor of each other. His wife had died but a few days before he realized that he was about to die. Therefore, he wished to divide his property equally between his own mother and his deceased wife's mother. A failure to accomplish his purpose as a whole should in no sense be held to defeat it entirely.

It follows that the decree must be reversed, and the cause will be remanded for further proceedings in accordance with the principles of equity and not inconsistent with this opinion.