CARTER *v.* GREENWAY.

Opinion delivered March 6, 1922.

1.    GIFTS—NECESSITY OF DELIVERY.—To consummate a gift, whether *inter vivos* or *causa mortis,* the property must be actually delivered, and the donor must surrender the possession and dominion thereof to the donee.

2.    GIFTS—REQUISITES OF GIFT CAUSA MORTIS.—A gift *causa mortis* must be made under the apprehension of death from some present disease or some other impending peril, and it becomes void by re-

covery from the disease or escape from the peril, and is revocable
at any time by the donor, and becomes void by the death of the
donee in the donor's lifetime.

3.  GIFT—PRESUMPTION OF ACCEPTANCE.—Where a gift *causa mortis*
is made to one person for another, there is a presumption of
acceptance if the gift is beneficial.

4.  GIFTS—OF CHECK.—Where the rights of creditors are not in-
volved, the delivery of a check, coupled with an intent to transfer
a present interest in the money and in the absence of a revocation,
is binding as a gift *causa mortis*, and the donee has the right to
the payment of the check after the death of the donor.

5.  GIFT—SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficient to es-
tablish delivery as a gift *causa mortis* of certain checks and notes.

Appeal from Independence Circuit Court; *Dene H.
Coleman,* Judge; affirmed.

### STATEMENT OF FACTS.

J. H. Greenway and Cora B. Smith instituted sepa-
rate suits in the circuit court against the First National
Bank of Batesville, Ark., to recover the sum of $2,000
each, alleged to be due on certificates of deposit.

The bank filed an answer in which it admitted the
execution of the certificates of deposit, and that they were
past due.    It averred that the certificates were issued
upon certain checks purported to have been drawn by C.
H. Greenway during his lifetime on an account kept by
him in the bank.    After the death of C. H. Greenway,
certain persons claiming to be his heirs at law notified
the bank not to pay said certificates of deposit, and that
they intended to contest the validity of the same.    The
bank alleged that it was ready and willing to pay the
amount of said certificates to the parties entitled to re-
ceive the same.    The bank asked that the parties claim-
ing the money be made defendants to the action.

Malissa C. Carter, Berdie Fulk, Sarah Maxey and
Martha Newberry, claiming to be heirs at law of C. H.
Greenway, deceased, then intervened in the action.    The
two suits were then consolidated for the purpose of trial.
The case then resolves itself into a contest between them
as rival claimants of the money.

C. H. Greenway was a bachelor about forty years of age when he died, at the residence of Mrs. Cora B. Smith, his sister, during the month of April, 1920, in Independence County, Arkansas.

According to the testimony of Mrs. Cora B. Smith, one of the appellees, she is a widow with two children, and her brother, C. H. Greenway, had lived with her for nine years before he died.   About Christmas 1919, C. H. Greenway, who was a bachelor, gave to her a little box and told her to take it and keep it and put it away where its contents would not get destroyed.   The box was wrapped up in paper, and Mrs. Smith put it in a satchel.   She kept the box, but did not open it until after her brother's death, which occurred on April 5, 1920. He died on Monday, and she opened the box the following Saturday in the presence of her 13-year-old daughter. When she opened the box, she found two checks signed by her brother, C. H. Greenway.   Both were drawn on the First National Bank of Batesville, Ark.   One of them was for $2,000 payable to herself, and the other was for $2,000 payable to J. H. Greenway, their youngest brother. There was also in the box a check signed by C. H. Greenway to her son for $158.   The checks with the indorsements on them are marked exhibits "A" and "B" and are as follows:

"EXHIBIT 'A'.

"No. ............................ Batesville, Ark. Nov. 25, 1919.
            "The First National Bank      81-115

     "Pay to the order of J. H. Greenway $2,000.00 (two thousand) dollars.
                              "C. H. Greenway."
Indorsed: "This is the way I want this to go."
                              "C. H. Greenway."
J. H. Greenway.
"Punched:  Paid 4-15-20".    81-115.

"EXHIBIT 'B'.

"No. ........................... Batesville, Ark., Nov. 25, 1919.
     "The First National Bank    81-115
     "Pay to the order of C. B. Smith $2,000 (two thousand) dollars.
                     "C. H. Greenway."
Indorsed: "This is the way I want this to go."
                     "C. H. Greenway." .

"Cora Smith.
"Punched: 4-13-20.    81-115."

When Mrs. Smith opened the box, besides the checks she found two notes, which, together with the endorsements thereon, she identified as exhibits "C" and "D", which are as follows:

"EXHIBIT 'C'.

"$100.00                12-2-1919.

"One day after date we promise to pay to the order of Chas. Greenway, one hundred no-100 dollars. For value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of 10 per cent. per annum, and if interest be not paid annually, to become as principal, and bear the same rate of interest.

         "J. T. Hollandsworth and
         "C. B. Hollandsworth."

Note attached: "This note will be paid to J. H. Greenway. I mean for him to have this note. C. H. Greenway."

"EXHIBIT 'D'.

"$75.00                           1-12-1919.

"One day after date we promise to pay to the order of C. H. Greenway, seventy-five no-100 dollars. For value received, negotiable and payable without defalcation or discount, and with interest from date at the rate of

10 per cent. per annum, and, if interest be not paid annually, to become as principal, and bear the same rate of interest.

"C. F. Copeland.

"A. G. Byler."

Note attached: "Pay this note to J. H. Greenway. This is the way I want this to go, this way. C. H. Greenway."

Mrs. Smith first showed the contents of the box to George Greenway, an older brother. On Monday next after finding them she saw J. H. Greenway and delivered to him the notes and certificates of deposit which were payable to him. On the following Wednesday, Mrs. Smith and J. H. Greenway went to the First National Bank and presented the checks for payment. They were required to indorse the checks, and the bank then paid them by issuing to each of them a certificate of deposit for $2,000, payable at the end of six months, on the return of the certificate properly indorsed, with interest at the rate of four per cent. per annum.

C. H. Greenway was not friendly towards his brothers-in-law, Fulk and Carter. He was more intimate with J. H. Greenway than with his other brothers. J. H. Greenway was the youngest of the boys, and came to see C. H. Greenway nearly every day during his last sickness.

According to the testimony of Dr. J. H. Kelley, he knew C. H. Greenway and was called to see him as a physician on the 23rd day of November, 1919. Greenway was suffering from an enlarged liver and a bad heart. Dr. Kelley told Greenway that he was likely to die, and that he was going to die unless he got relief. He had waited on Greenway previously, and because of Greenway's obstinacy about taking medicine he felt like he ought to tell him his real condition. He did not tell him of his serious condition to scare him, but in an effort to make him take the treatment he prescribed for him. He thought possibly he might get better if he would do so.

Mrs. Smith's 13-year-old daughter, Edna, corroborated her testimony about the finding of the checks and notes in the box.

Other evidence for appellees tended to show that C. H. Greenway was not on good terms with his brothers-in-law, Fulk and Carter, and that he thought more of his youngest brother, J. H. Greenway, than he did of his other brothers.

On the part of appellants it was shown that C. H. Greenway had settled his differences with his brothers-in-law and was on friendly terms with them during his last illness. There was also evidence adduced by appellants tending to show that the signature to the checks was not the genuine signature of C. H. Greenway.

Inasmuch as there was a verdict for appellees, and its sufficiency must be tested by the evidence adduced in their favor, it is not necessary to more particularly abstract the testimony for appellants.

Judgment was rendered in favor of appellees, and to reverse that judgment appellants have duly prosecuted this appeal.

*John B. & J. J. McCaleb,* for appellants.

The verdict is not supported by the evidence. In order to uphold a gift *causa mortis* the proof must be clear and convincing. 93 Ark. 548; 72 Ark. 307; 44 Ark. 42.

The evidence was not sufficient to show that it was the intention of C. H. Greenway to make a gift of the certificate of deposit to Mrs. Smith, or that she was to act as the agent of J. H. Greenway. 44 Ark. 42.

To constitute a valid gift, there must be a complete delivery of the subject of the gift. 12 R. C. L. 495. To establish a gift *causa mortis,* there must be an intention to pass the title, and this intention must be carried into effect by delivery. 44 Ark. 42; 72 Ark. 307; 43 Ark. 307; 132 Ark. 54.

The delivery of a check not to be used until after the death of the maker does not constitute a gift *inter vivos.*

27 L. R. A. (N. S.) 308. A check of itself does not operate as an assignment of the funds. C. & M. Digest, § 7955.

One cannot make his own check or note the subject of a gift so that in the absence of payment it can be enforced against the donor. 105 Cal. 143; 69 Conn. 404; 70 Ill. 647; 39 Ind. App. 108; 124 Ky. 512; 17 La. 144; 90 Me. 468; 96 Md. 609; 111 Mass. 24; 13 Mich. 282; 60 Ark. 169; 93 Ark. 548; 131 Ark. 501.

*Samuel M. Casey,* for appellees.

The delivery of a gift may be made to the donee, her agent or trustee. 59 Ark. 195.

When a gift is made by one stricken with a fatal malady and has no hope of recovery, the presumption is, that it is a gift *causa mortis.* 131 Ark. 501.

If the gift is absolute, a mere postponement of the enjoyment until the death of the donor is not material. 14 A. L. R. 702, and note to 3 A. L. R. 902.

There was a valid gift *causa mortis.* 36 S. E. 74; 93 Ark. 548. It was not necessary that the certificate of deposit should be indorsed. 12 R. C. L. 966; 99 Am. St. Rep. 912. The evidence was sufficient to show delivery. 211 S. W. 127.

The law presumes an acceptance of a gift beneficial to the donee, *Gordon* v. *Clark* v. *Clark,* 149 Ark. 173.

Mrs. Smith took the gifts to her brother as trustee for him. 101 Va. 414; 44 S. E. 721; 117 Am. St. Rep. 694; 105 S. C. 459; 3 A. L. R. 891.

The gifts should be sustained. 100 Minn. 331; 111 N. W. 269; 10 Ann. Cas. 473; 8 L. R. A. (N. S.) 828.

HART, J. (after stating the facts). The theory upon which appellees brought this suit and upon which it was tried in the lower court was that they were entitled to the amounts of the checks on the ground of a gift *causa mortis.* The law on this question has been clearly and concisely stated by the New York Court of Appeals in *Ridden* v. *Thrall,* 11 L. R. A. 684. Judge Earl, speaking for the court, said:

"Gifts *causa mortis,* as well as *inter vivos,* are based upon the fundamental right every one has of disposing of his property as he wills. The law leaves the power of disposition complete, but, to guard against fraud and imposition, regulates the methods by which it is accomplished. To consummate a gift, whether *inter vivos* or *causa mortis,* the property must be actually delivered, and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos,* the moment the gift is thus consummated it becomes absolute and irrevocable. But in the case of gifts *causa mortis* more is needed. The gift must be made under the apprehension of death from some present disease, or some other impending peril, and it becomes void by recovery from the disease or escape from the peril. It is also revocable at any time by the donor, and becomes void by the death of the donee in the lifetime of the donor. It is not needful that the gift be made *in extremis* when there is no time or opportunity to make a will. In many of the reported cases the gift was made weeks, and even months, before the death of the donor, when there was abundant time and opportunity for him to have made a will. These are the main features of a valid gift *causa mortis,* as they are set forth in many text-books and reported cases."

The language used is in accordance with our own holdings on the subject. *Ammon* v. *Martin,* 59 Ark. 191; *Hatcher* v. *Buford,* 60 Ark. 169; *Lowe* v. *Hart,* 93 Ark. 548; *Harmon* v. *Harmon,* 131 Ark. 501, and *Gordon* v. *Clark,* 149 Ark. 173.

It is equally well settled under these authorities that an acceptance may be implied where the gift, otherwise complete, is beneficial to the donee. It was also held in the case of *Gordon* v. *Clark, supra,* that where a gift *causa mortis* is made to one person for another, there is a presumption of acceptance where the gift is beneficial.

The evidence shows that at the time C. H. Greenway delivered the box containing the checks to his sister, and also at the time of his death, he had on general deposit

in the First National Bank of Batesville $2,000, and also had there $2,000 on time deposit. His estate was solvent, and the money was not needed to pay debts.

. It is earnestly insisted by counsel for appellants that a ·check ·can not be made the basis of a gift *causa mortis*. There is some conflict and confusion in the authorities on this question. But we think that the better reasoning and the trend of our own authorities, where the rights of creditors are not involved, is that when the delivery of the check is coupled with an intent to transfer a present interest in the ·money, and no revocation is attempted, the intent of the donor should be given effect, and that the donee has the right to the payment of the check after the death of the drawer as well as before. This is a part of the reasoning in *Lowe* v. *Hart,* 93 Ark. 548, although the precise point was not involved and was not decided. See also *Gordon* v. *Clark, supra.*

We think that the rule laid down in Morse on Banks and Banking (5 Ed.) vol. 2, par. 549, p. 198, to the effect that there may be a gift of a check *causa mortis* is the correct one. After saying that, in order to complete the gift, there must be such a delivery by the donor as to ·clearly indicate his intent to transfer the property from himself, and an actual transfer of the rightful control of the property, the learned author continues as follows: "But this, we contend, is done when he gives a check to the donee, or to another to give to the donee, and does not revoke ·before the delivery is made according to instructions. In this peculiar case of a check, the donor could revoke during his life; but as against the rest of the world it is a clear delivery of control of the money, and no one but the creditors of the donor have a right to object. They have a superior equity to the donee, but, if the donor is solvent, and continues in the same mind till his demise, what right has any one else to interfere with his clear intent? A bill of exchange may be the subject of a *donatio causa mortis,* and the death of the drawer of a bill does not operate to change the duty of the drawee

to accept it; why should it be different in the case of a check? The rule that has grown up is a child of the error that the drawer's death is a revocation of the bank's authority to pay his checks, and should be banished with its parent. It does not seem sensible to say that a *donatio causa mortis* is a gift to take effect in case of death, and then to say that the donor did not intend it to be good unless it took effect before his death. And if he intended it to take effect after death, why not give life to his intent? If it is said that the formalities of the wills act must be conformed to in order to guard against fraud, then let the law be consistent, and deny the possibility of any gift *causa mortis,* by savings bank book, or any delivery, actual or constructive. If he had given bank bills, or the same money that is on deposit in the bank, to some person, D, to keep, and in case the donor died to give it over to the donee, it would surely be held a good gift; in such case, it could not be properly said that the agent's authority was revoked by his principal's death, for it is clear that, instead of ceasing at the donor's demise, it is then only that the agent's authority arises. Where a donor delivered to B for the donee, it has been held that a delivery by B to the donee after the death of the donor is good. And if an agent's authority does not always die with his principal, then is it not common sense to hold that a bank's authority does not cease, at any rate in relation to checks that the donor delivered with the very intent that the fund should go to the donee in case of his death? The donor has a right to do with his property as he chooses, and his intent, clearly indicated, should be respected, and his personal representative has no right to frustrate his wish. The continuous progress of legal thought on this subject of gift points to the conclusion set forth above, viz., that, although a gift of a check cannot give an action against the donor himself, nor prefer the donee to creditors, yet it should be held otherwise good. And if the donor is solvent and does not revoke during his life, it ought, we think, to be good against the deposit, and against his personal repre-

sentatives when they have obtained possession of the deposit on which the check was drawn; for in this respect the theory that said personal representatives are identical with the deceased is groundless; any action they may take against the donee profits, not the deceased, but his heirs and legatees, and therefore the executor or administrator in reality represents said heirs or legatees, and as against them the donee has the superior equity."

To the same effect see *Varley* v. *Sims* (Minn.) 8 L. R. A. (N. S.) 829; *May* v. *Jones* (Iowa) 54 N. W. 231; *Phinney* v. *State*, (Wash.) 68 L. R. A. 119; *Murphy* v. *Bordwell* (Minn.) 85 Am. St. Repts. 454, and *Hill* v. *Escort* (Tex. Civ. App.) 86 S. W. 367, and cases cited.

Error is predicated upon the action of the court in giving certain instructions asked by appellees and refusing others asked by appellants. With regard to these assignments of error, we only deem it necessary to say that the instructions given by the court are in accordance with the principles of law announced and approved in this opinion. The instructions asked by appellants were either not in accordance with the principles of law herein declared, or they were peremptory in their nature. Therefore, the assignments of error with respect to the instructions are not well taken.

Finally, it is insisted that the evidence is not sufficient to support the verdict. We do not agree with counsel for appellants in this contention. According to the evidence for appellees, C. H. Greenway had resided with his widowed sister, Mrs. Smith, for nine years prior to his death. He was a bachelor and thought more of his youngest brother, J. H. Greenway, than any of his other brothers. Here, then, is shown the motive for making the gift to his widowed sister and his youngest brother, but of course there must have been not only an intent to give, but also a delivery of the thing given. According to the testimony of Mrs. Smith, her brother gave her the box and told her to keep it and put it away where it would not get destroyed. After he died, she opened

the box in the presence of her daughter and took therefrom the checks, which are copied in our statement of facts, as well as some notes. On each check was indorsed the following: "This is the way I want this to go." Each check was drawn on the First National Bank of Batesville, Ark. One of them was for $2,000 payable to the order of J. H. Greenway. The other was for a like amount and payable to the order of C. B. Smith. The checks were dated Nov. 25, 1919. Just a few days before this, C. H. Greenway's physician told him that he was going to die and that there was very little probability of his getting well. It seems that he kept his checks in his own possession until about Christmas, when he gave them to his sister. He died the following April. There were also in the box which he gave to his sister two notes, and on one of them was the following notation: "Pay this note to J. H. Greenway. This is the way I want this to go, this way." On the other note was the following: "This note will be paid to J. H. Greenway. I mean for him to have this note." The notations on the notes and checks signed by C. H. Greenway, when coupled with the other testimony, makes it fairly inferable that he intended to make a gift *causa mortis* to his sister and youngest brother, when a box and its contents were delivered to her. He had been told that he was going to die, and signed the checks a few days thereafter. It is inferable that he became more thoroughly convinced of his impending death when he gave the box to his sister about Christmas. He did not check against either account after signing the checks. It has been aptly said that when a chattel or chose in action has been given *causa mortis,* possession delivered, and death has performed the condition subsequent on which it depended, no title whatever descends to the heirs of the donor, and his administrator has no right to the possession of the same for the purpose of administration.

Upon the authority of *Lowe* v. *Hart*, 93 Ark. 548, it is fairly inferable that there was an actual delivery of the

checks to Mrs. Smith for her use and for J. H. Green-
way's use.   An expectation of death at the time of de-
livery, the death of the donor following, the subsequent
delivery of one of the checks to J. H. Greenway, and the
presentation to the bank of the checks for payment after
C. H. Greenway's death, warranted the jury in finding
for the appellees.   In such a case, as we have already
seen, the law implies an acceptance of the gift, although
at the time the box was delivered to Mrs. Smith neither
she nor J. H. Greenway knew what it contained.   The
circumstances under which it was delivered, however,
indicate that there was something of advantage to her or
some trust reposed in her of some kind by her brother,
C. H. Greenway.

We find no prejudicial error in the record, and the
judgment will be affirmed.