STIFFT *v.* W. B. WORTHEN COMPANY.

## Opinion delivered March 5, 1928.

1. GIFTS—EFFECT OF GIFTS INTER VIVOS.—Gifts *inter vivos* are gifts between the living, and are perfected and become absolute during the lifetime of the donor and the donee.

2. GIFTS—VALIDITY OF GIFTS INTER VIVOS.—To constitute a valid gift *inter vivos*, the donor must be of sound mind, must actually deliver the property to the donee, and must intend to. pass title immediately, and the donee must accept the gift.

3. GIFTS—TAKING EFFECT IN FUTURE.—A gift *inter vivos* cannot be made to take effect in the future, as such a transaction would only be a promise or agreement to make the gift, and, being without consideration, would be unenforceable and void.

4. CONTRACTS—CONSIDERATION OF PROMISE TO MAKE GIFT.—Considerations of blood or love and affection are not sufficient to support a promise to make a gift in the future.

5. GIFTS—SUFFICIENCY OF EVIDENCE TO ESTABLISH GIFT.—Evidence that a memorandum was found in decedent's safety deposit box, to which his wife had keys, to the effect that certain bonds mentioned were the property of his wife, but no bonds were found therein, and that, while decedent had made declarations that he had given such bonds to his wife, he continued to exercise acts of ownership over them and pledged them as his own, and finally sold them, collected the money and deposited it to his credit, *held* not to show delivery of an intended gift necessary to make the gift complete.

Appeal from Pulaski Circuit Court, Third Division; *Marvin Harris*, Judge; affirmed.

*Frauenthal & Johnson, Rose, Hemingway, Cantrell & Loughborough*, for appellant.

*G. DeMatt Henderson* and *Cockrill & Armistead*, for appellee.

McHANEY, J. Appellant is the widow of Chas. S. Stifft, deceased, and appellees are the executors of his estate. Some time after the death of Mr. Stifft, appellant presented her claim to the probate court of Pulaski County, alleging that she was the owner of $21,700 of the bonds of the Arkansas Diamond Corporation, by virtue of a gift thereof from her husband, and that he had sold said bonds for the sum of $14,647.50 and had deposited said sum in the bank of appellee, W. B. Worthen Company, in his own name, and that he had drawn checks for his own use against said account, leaving a balance therein of $9,027.02 at the time of his death. She prayed that said sum be delivered to her, and that she have judgment against the estate for the remainder of the sale price of the bonds, with 6 per cent. interest from the date of sale, July 26, 1926. She later amended her demand, claiming that there was an additional $1,000 of bonds belonging to her which her husband had sold and converted to his own use, the exact sale price being unknown to the claimant, but which she presumed were sold at the same price, 67½ cents on the dollar, and asked judgment for $675 additional. The probate court allowed the claim as a fourth-class claim, and both parties appealed to the circuit court, where the cause was submitted to the court sitting as a jury, on substantially the following facts:

A large envelope was found in Mr. Stifft's desk, entirely empty, bearing the indorsement: "Within bonds of Arkansas Diamond Corporation, $22,700, are the property of my wife, Sophia Leon Stifft. June 16, 1923. Chas. S. Stifft. Witness: L. J. Gibson." Appellant saw this envelope in Mr. Stifft's desk with the bonds in it, but just when she saw this, or how many bonds there

were in the envelope, is not shown. No bonds were in it at the time of his death, nor is it shown how long it had been since there were any bonds in it. After Mr. Stifft's death, his safety deposit box in the American Southern Trust Company was opened in the presence of the executors and appellant, and a slip of paper was found therein with the following writing thereon: "The within bonds of the Arkansas Diamond Corporation are the property of my wife, Sophia Leon Stifft, without liability on her part. The amount of the bonds is $22,700, more or less. Chas. S. Stifft." This writing was likewise dated June 16, 1923. Both writings were in the genuine handwriting of Chas. S. Stifft. No bonds were found in the safety deposit box. It is not shown that these bonds were ever in the safety deposit box, except as it may be inferred from this writing, and except the testimony of Mrs. Lally, the custodian of the safety deposit vault of the American Southern Trust Company, who stated that Mr. Stifft told her that there were bonds in the box, and that everything in the box belonged to Mrs. Stifft. Appellant and Mr. Stifft each had a key to this box.

Mr. Stifft stated on several different occasions to Mr. and Mrs. Leon, brother and sister-in-law of appellant, and in her presence, that he had given all the stock and bonds he owned in the diamond mines to appellant, and referred to them several times as her property.

On July 25, 1923, Mr. Stifft borrowed from appellee, W. B. Worthen Company, $3,500, and deposited as collateral to his note therefor $3,500 of these bonds. These same identical bonds remained in the possession of the W. B. Worthen Company from that date until January 11, 1926, when they were delivered by it to the Union Trust Company. On December 27, 1923, Mr. Stifft borrowed a sum of money from the Union Trust Company and deposited $10,000 of these same bonds with it as collateral for said loan, and on December 28, 1925, he deposited the remainder of said bonds, $8,200, with the Union Trust Company, making a total amount of $18,200

of these bonds then in the hands of the Union Trust Company, where they remained, together with the $3,500 it received from the W. B. Worthen Company, until June 15, 1926, when the whole amount thereof, $21,700, was shipped by the Union Trust Company to Mr. Samuel W. Reyburn in New York, in completion of a sale of said bonds by Mr. Stifft to Mr. Reyburn. On July 26, 1926, Mr. Reyburn issued his check in payment of said bonds in the sum of $14,647.50, payable to Chas. S. Stifft, which check was delivered to Mr. Stifft in New York, who sent same direct to the W. B. Worthen Company for deposit and credit to his personal account, which was done, and he thereafter checked against same up to the date of his death. He also collected the interest coupons attached to the bonds, and used the money as his own. Mr. Stifft left a will, dated March 30, 1926, containing the following provision: "I also give to my said wife, Sophia Leon Stifft, all money which I have to date of my death paid in the American Building & Loan Association, also twenty-one thousand seven hundred dollars ($21,700) bonds of the Arkansas Diamond Corporation."

Based on these facts, the circuit court found that the evidence did not establish a gift of said bonds by Chas. S. Stifft to appellant, and entered a judgment disallowing the claim of appellant, and she has appealed.

Was the court correct in finding "that the evidence does not establish a gift of the bonds aforesaid by the said Charles S. Stifft to the said Sophia Leon Stifft?" This is the question we are called upon to decide. The facts are undisputed.

Our statute, § 4876, C. & M. Digest, throws some light on the question. It is as follows: "Every gift of goods and chattels, and all other conveyances of the same, not on consideration deemed good in law, shall be void as against all creditors and purchasers; and all such gifts, grants and conveyances shall not be void even against the grantor unless possession really and *bona fide* accompany such gift or conveyance." It cannot be said, under the above facts, that possession of these bonds did

"really and *bona fide* accompany such gift or convey-
ance." Appellant never "really" had the possession of
said bonds—only a constructive possession thereof by
virtue of having a key to the safety-deposit box wherein
they may or may not at one time have been deposited.
The only written evidence that they were ever in said
box is the memoranda dated June 16, 1923, found in the
box after Mr. Stifft's death. It is shown beyond all con-
troversy that, if they were in there at that time, less than
thirty days thereafter, on July 5, he took $3,500 of them
out, deposited them as collateral to a loan with W. B.
Worthen Company, and never again did they find their
way back therein. The same thing is true with reference
to the $10,000 of said bonds deposited with the Union
Trust Company on December 27, 1923, and the $8,200
thereof deposited with the same company on December
28, 1925. No *real* possession, no actual possession
thereof, was ever had by appellant, and, even though it
be conceded that all the bonds were in the box on June
16, 1923, the constructive possession thereof by appel-
lant did not continue long thereafter. Gifts *inter vivos,*
or *donatio inter vivos,* are gifts between the living, and
are perfected and become absolute during the lifetime of
the donor and the donee. *Hatcher* v. *Buford,* 60 Ark.
169, 29 S. W. 641, 27 L. R. A. 507. The elements necessary
to constitute a valid gift *inter vivos* were stated by this
court in *Lowe* v. *Hart,* 93 Ark. 548, 125 S. W. 1030, to the
effect that the donor must be of sound mind, must actually
deliver the property to the donee, must intend to pass the
title immediately, and the donee must accept the gift. It
will therefore be seen that a gift *inter vivos* cannot be
made to take effect in the future, as such a transaction
would only be a promise or agreement to make a gift, and,
being without consideration, would be unenforceable, and
void, and considerations of blood or love and affection are
not sufficient to support such a promise. 12 R. C. L. 930.
This court, from *Hynson* v. *Terry,* 1 Ark. 83, down to the
present time, in an unbroken line of cases, has held that
actual delivery is essential, both at law and in equity, to

the validity of a gift, and that without it the title does not pass. Mere delivery of possession is not sufficient, but "there must be an existing intention accompanying the act of delivery to pass the title, and, if this does not exist, the gift is not complete. *McKee* v. *Hendricks,* 165 Ark. 369-383, 264 S. W. 825, 952, and cases cited. In the case of *Carter* v. *Greenway,* 152 Ark. 339, 238 S. W. 65, it is said:

"Gifts *causa mortis,* as well as *inter vivos,* are based upon the fundamental right every one has of disposing of his property as he wills. The law leaves the power of disposition complete, but, to guard against fraud and imposition, regulates the methods by which it is accomplished. To consummate a gift, whether *inter vivos* or *causa mortis,* the property must be actually delivered, and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos,* the moment the gift is thus consummated it becomes absolute and irrevocable."

See also the opinion of Judge Sanborn in *Allen-West Com. Co.* v. *Grumbles* (C. C. A.), 129 Fed. 287, where it is said:

"Among the indispensable conditions of a valid gift are the intention of the donor to absolutely and irrevocably divest himself of the title, dominion and control of the subject of the gift *in praesenti* at the very time he undertakes to make the gift (citing cases); the irrevocable transfer of the present title, dominion, and control of the thing given to the donee, so that the donor can exercise no further act of dominion or control over it (citing cases); and the delivery by the donor to the donee of the subject of the gift or of the most effectual means of commanding the dominion of it. This delivery must be an actual one 'so far as the subject is capable of it. It must be *secundum subjectam materiam,* and be the true and effectual way of obtaining the command and dominion of the subject.' 2 Kent's Com. 439. If the subject of the gift is a chose in action, such as a bond, a note, or stock in a corporation, the delivery of the most

effectual means of reducing the chose to possession or use, such as the delivery of the bond, or the note, or the certificate of stock, if present and capable of delivery, is indispensable to the completion of the gift." See also *Chambers* v. *McCreery* (C. C. A.), 106 Fed. 364.

Mr. Stifft wholly failed to consummate his intended gift. He did not divest himself of the title, dominion and control of these bonds on June 16, 1923, or at any other time thereafter. He thereafter continued to exercise acts of ownership, dominion and control over them, actually pledged and hypothecated them as his own, collected the interest coupons attached to them as his own, made them the subject of a specific bequest to appellant in his will dated March 30, 1926, thereby negativing, if not completely repudiating, his former intention to make a gift *inter vivos,* and finally sold them as his own, collected the money, deposited it to his credit, and checked on it until his death. So, as was said by the court in *Chambers* v. *McCreery, supra,* it is "impossible to apply the facts as we find them to be in the case we have now to decide with the law we have just referred to, and thereby sustain the contention of the complainants below. The 'constructive' delivery insisted on by counsel for appellants is inconsistent with the conduct of the alleged donor from the date of the declarations made by him from which the delivery is said to be inferred to the day of his death."

We must therefore overrule the contention of learned counsel for appellant, and the judgment will be affirmed.