BRYANT v. PARKER.

4-3279

Opinion delivered January 15, 1934.

*W. J. Lanier,* for appellant.

*F. F. Harrelson* and *W. J. Sherman,* for appellee.

BUTLER, J. A. W. Bryant died intestate on the 3d day of May, 1932, leaving surviving him a widow, Mrs. Lydia Bryant, and four daughters and a son by a former marriage and three grandchildren, the children of another daughter by the same former marriage, who had died some years before the death of A. W. Bryant. This action was begun by the widow to set aside a gift of $5,000 in money, and a deed of trust executed by Bryant and wife, Lydia Bryant, to Bryant's son-in-law, S. B. Walker, and his wife, Bertie Walker, to secure an alleged debt of $900 with accrued interest. Contention was made, first, that there was no actual gift of the money by the intestate to Walker and wife, and, if so, the donor was mentally incapable of thus disposing of his property, and, second, that there was no *bona fide* debt due which the mortgage was given to secure and that the trust deed was void. The administrator of the estate and certain other parties were made defendants as well as Walker and his wife and the other heirs of the intestate. Issue was joined on the allegations of the complaint, and much testimony was adduced before the trial court, which court, after having considered the pleadings and proof, rendered a decree dismissing Mrs. Bryant's complaint for want of equity. From that part of the decree relating to the validity of the gift to Walker and his wife, and upholding the deed of trust, Mrs. Bryant has appealed.

Two questions of fact are involved: first, whether or not the evidence is sufficient to establish a gift *inter vivos,* and, second, whether or not Bryant, at the time of the making of the gift to Walker, was mentally capable of knowing the effects and consequences of his act.

It is the contention of appellant's counsel, which he has ably presented for our consideration, that the act of

Bryant was so unnatural in the light of surrounding circumstances as to strongly indicate that no actual gift of the money was intended to be made by him to his son-in-law, and that, if so, it indicated that his mind was so enfeebled by age and infirmity as to render him legally incapable of disposing of his property; that the attempt to take advantage of his alleged gift was a fraud upon him and the appellant; that the circumstances further show that there was in fact no consideration for the execution of the deed of trust; that all of this corroborates the testimony adduced by the appellant to sustain the allegations of her complaint, and clearly preponderates in her favor, and that therefore the decree of the trial court should be reversed.

The law relating to gifts *inter vivos* is well settled, and has been many times stated by this court, the authorities being reviewed and the rule restated in the recent case of *Stifft* v. *W. B. Worthen Co.,* 176 Ark. 585, 3 S. W. (2d) 316, (cited by the appellant) as follows: ''The elements necessary to constitute a valid gift *inter vivos* were stated by this court in *Lowe* v. *Hart,* 93 Ark. 548, 125 S. W. 1030, to the effect that the donor must be of sound mind, must actually deliver the property to the donee, must intend to pass the title immediately, and the donee must accept the gift. It will therefore be seen that a gift *inter vivos* cannot be made to take effect in the future, as such a transaction would only be a promise or agreement to make a gift, and, being without consideration, would be unenforceable and void, and considerations of blood or love and affection are not sufficient to support such a promise. 12 R. C. L. 930. This court, from *Hynson* v. *Terry,* 1 Ark. 83, down to the present time, in an unbroken line of cases, has held that actual delivery is essential, both at law and in equity, to the validity of a gift, and that without it the title does not pass. Mere delivery of possession is not sufficient, but 'there must be an existing intention accompanying the act of delivery to pass the title, and, if this does not exist, the gift is not complete.' '' *McKee* v. *Hendricks,* 165 Ark. 369-383, 264 S. W. 825, 952, and cases cited. In the case of *Carter* v. *Greenway,* 152 Ark. 339, 238 S. W. 65, it is said: ''Gifts

*causa mortis,* as well as *inter vivos,* are based upon the fundamental right every one has of disposing of his property as he wills. The law leaves the power of disposition complete, but, to guard against fraud and imposition, regulates the methods by which it is accomplished. To consummate a gift, whether *inter vivos* or *causa mortis,* the property must be actually delivered, and the donor must surrender the possession and dominion thereof to the donee. In the case of gifts *inter vivos,* the moment the gift is thus consummated, it becomes absolute and irrevocable.''

Although there are circumstances which render the conduct of Bryant with respect to his property unusual, we are of the opinion that, when all of the testimony is considered, it is sufficient to make the gift of Bryant to Walker and his wife a completed and irrevocable one within the rule stated, that at the time of its execution he was mentally capable of performing the act, and further that the evidence preponderates in favor of the appellee, Walker, in regard to the validity of the debt and the deed of trust to secure the same. Bryant was a widower at the time he married the appellant, having a number of children, all of whom were grown, as well as his grandchildren, with the exception of one. When he was courting the appellant, he told her of his financial condition, that he owned a home and had about $8,000 in cash in the bank. This appears to have been approximately true. He was married to the appellant in the month of April, 1927, being then well advanced in years and afflicted with ills usually attendant upon persons of that age, but, except for occasional spells which would confine him to his home for a few days at a time, he was able to perform those actions which men ordinarily did; he was able to, and did, work in his garden, attend to his live stock and make trades, but grew progressively more infirm and feeble until his death. About one year after his marriage, he sent for his son-in-law, S. B. Walker, and, without any previous intimation of such intention, told him he was going to give him $5,000 out of the money he had then on deposit in the Planters' Bank & Trust Company of Forrest City. He directed Walker to draw

a check payable to himself and his wife for that sum and gave it to Walker, telling him that it was his desire that no mention be made of the matter. Walker carried the check to his home, where he informed his wife of what had occurred, and gave her the check, which she indorsed. Bryant went with Walker to the bank and introduced him to the cashier where the check was presented, some conversation had relative to it, and the money transferred from the account of Bryant to a savings account in the name of S. B. Walker and Bertie Walker. The cashier related these conversations, which are unnecessary to set out here, but, when taken in their entirety, together with the testimony of Walker and his wife, and with the subsequent conduct of Bryant, are sufficient to sustain the chancellor in his finding that the facts attendant upon these circumstances were sufficient to constitute a valid gift *inter vivos*. When the $5,000 was transferred to Walker, there remained a little in excess of $600 to the credit of Bryant. If he had any other money in his possession or to his credit elsewhere, we are not so informed. At any rate, about a year before his death, Bryant informed Walker that his funds were exhausted, that he needed $900, and wanted to borrow that amount from him, agreeing to give Walker a deed of trust to secure the loan on the home in which he and Mrs. Bryant lived. Walker agreed to lend Bryant the money, and, on instructions given, the note and deed of trust were prepared by Walker's attorney, who, accompanied by a notary, carried the instruments to the home of Bryant, where the matter was explained to Mrs. Bryant and she there signed the deed of trust, relinquishing her dower and homestead rights in the property described. Before this was done, she had been informed by Bryant that his money was all gone, and that it was necessary to borrow from Walker, and to execute the deed of trust.

The evidence shows that a part of the $5,000 gift was used by Walker in making the loan to Bryant, and it is upon this fact that the contention is based that there was no consideration for the execution of the deed of trust, or any valid debt created by the transaction.

On the question of Bryant's mental capacity, the evidence is in conflict, but, as we view it, it preponderates to the effect that while physically weak and infirm, he was mentally capable of knowing, and did know, the effect and consequences of any business transaction which he might make. The evidence is undisputed, both on the part of the appellant and that given by Walker, that there was no particular reason why Bryant should have preferred one of his children above the others, or why he should have denuded himself of his estate so as to leave his widow destitute. The two had lived happily together during their married life; he was kind and considerate of her, and she of him, and, so far as the record discloses, there at no time existed any discord between the two. The evidence further shows beyond any dispute that Walker and his wife had done nothing more for their father than the other children or that he held them in any greater degree of affection than the others. But, with all this, the fact remains that he had absolute control over his money and the power of disposing of it as he saw fit. The record is silent as to the motivating cause of his preference. What his secret motives were, we do not know, and have no means of discovering. It might be, and it appears, that he was unjust and unkind to a faithful wife, but that does not alter the law, and, however much we may question the justness of his act, we cannot gainsay its legality.

The appellant calls attention to a number of circumstances which, it is contended, dispute the claim that Walker had absolute control and dominion over the $5,000, such as borrowing various sums from time to time and giving mortgages to secure the same, and, as we have before noted, the apparently unnatural conduct of Bryant. But these were not sufficient in the mind of the chancellor to overturn the direct evidence of facts and circumstances which supported the view he reached.

It would serve no useful purpose to set out the evidence in detail, and would unduly extend this opinion. The questions before the chancellor were disputed questions of fact, and the judgment he reached was, in his

opinion, as in ours, supported by a preponderance of the testimony.

Let the decree be affirmed.